# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

**25-30380**

————————

## UNITED STATES OF AMERICA,

Plaintiff-Appellee

**v.**

## TALANZO DEBROW,

Defendant-Appellant

Appeal from the United States District Court for the
Western District of Louisiana
CRIMINAL NUMBER 5:24-CR-238-1

————————————————————————

## BRIEF ON BEHALF OF APPELLEE,
## THE UNITED STATES OF AMERICA

————————————————————————

ZACHARY A. KELLER
United States Attorney
Western District of Louisiana

T. FORREST PHILLIPS
AL Bar # 3736E29R
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501; (337) 262-6618
Attorneys for Plaintiff-Appellee

**STATEMENT REGARDING ORAL ARGUMENT**

This case presents one issue regarding whether Debrow's statute of conviction, 18 U.S.C. § 922(g)(1), violates the Second Amendment as applied to him. Fifth Circuit precedent forecloses the defendant's as-applied claim on multiple fronts. Accordingly, the United States respectfully suggests that oral argument is not necessary in this matter.

**TABLE OF CONTENTS**

**PAGES**

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES...................................................................iv

STATEMENT OF JURISDICTION........................................................ 1

ISSUE ON APPEAL............................................................................ 2

STATEMENT OF THE CASE .............................................................3

    *Relevant Criminal Background* ......................................................3

    *Offense Conduct*............................................................................ 4

    *District Court Proceedings* ............................................................5

SUMMARY OF THE ARGUMENT ................................................... 6

ARGUMENT ...................................................................................... 7

    I.    Debrow's as-applied challenge fails because this country's "history and tradition" supports disarmament based on his felony criminal history. ...............7

        A.    Standard of Review ....................................................... 7

        B.    Applicable Substantive Law ......................................... 7

        C.    Application of the Law to the Record ............................ 8

CONCLUSION ..................................................................................13

CERTIFICATE OF SERVICE and
      COMPLIANCE WITH ECF FILING STANDARDS ....................14

CERTIFICATE OF COMPLIANCE....................................................15

**TABLE OF AUTHORITIES**

**PAGES**

FEDERAL CASES

***Supreme Court Cases***

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    597 U.S. 1 (2022) ............................................................... 5, 7, 8

***Circuit Court Cases***

*United States v. Betancourt,*
    139 F.4th 481–85 (5th Cir. 2025) ...................................... 9, 10, 11

*United States v. Diaz,*
    116 F.4th 458–72 (5th Cir. 2024) ...................................... 8, 11-12

*United States v. Howard,*
    766 F.3d 414 (5th Cir. 2014) ............................................... 7

*United States v. Kimble,*
    142 F.4th 308 (5th Cir. 2025) .............................................. 12

*United States v. Morgan,*
    147 F.4th 522 (5th Cir. 2025) .............................................. 10

*United States v. Morris,*
    131 F.3d 1136 (5th Cir. 1997) .............................................. 12

*United States v. Reyes,*
    141 F.4th 682 (5th Cir. 2024) ............................................... 9

*United States v. Simpson,*
    152 F.4th 611 (5th Cir. 2025) .............................................. 10

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1) ............................................................... *passim*

18 U.S.C. § 3231 ......................................................................... 1

28 U.S.C. § 1291 ......................................................................... 1

## STATE STATUTES

LA. REV. STAT. ANN. § 14:55 .......................................................9

LA. REV. STAT. ANN. § 14:55(A) ....................................... 4, 12, 13

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a criminal case. The district court had subject matter jurisdiction under 18 U.S.C. § 3231. The district court entered the judgment of conviction on July 2, 2025. ROA.6. The defendant filed a notice of appeal the next day, making the notice timely. ROA.93. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# ISSUE ON APPEAL

I.    Does the Second Amendment permit disarmament, under § 922(g)(1), where the defendant has a predicate felony conviction for "aggravated criminal damage to property" based on the defendant's use of a stolen car to strike police cruisers while evading arrest?

## STATEMENT OF THE CASE

This appeal follows the conviction by guilty plea of the defendant, Talanzo Debrow, for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ROA.230. Before Debrow pleaded guilty, he filed a motion to dismiss, in which he argued that § 922(g)(1) was unconstitutional, as applied to him, after the Supreme Court's decision in *Bruen*. ROA.28. The district court denied the motion. ROA.64. Debrow now appeals.

### *Relevant Criminal Background*

Debrow's prior felony conviction stems from his dangerous (and, at times, outright violent) vehicular flight from police. ROA.236. Specifically, in May 2019, Louisiana State Police in Caddo Parish spotted Debrow driving a car reported as stolen. ROA.235–36. Police attempted to stop Debrow. ROA.236. Debrow, however, fled the stop, striking multiple pursuing patrol units in the process. ROA.236. Debrow undertook this violent flight from police while carrying in the car a Glock handgun that was, itself, stolen. ROA.236. This flight from arrest— specifically Debrow's ramming into multiple patrol cars to flee capture—

led to a felony conviction for aggravated criminal damage to property, in violation of La. Rev. Stat. § 14:55(A). ROA.235.

### *Offense Conduct*

Soon after being released from prison, Debrow committed the instant § 922(g)(1) offense, when Debrow again fled police while possessing a gun. Specifically, on January 9, 2023, Shreveport police attempted to stop a stolen Kia Sedan. ROA.233. The driver of the sedan, however, refused to stop, instead leading police on yet another chase and occasionally veering into the oncoming traffic lane during its flight. ROA.233. Eventually, the driver of the Sedan wrecked the car. ROA.233. Debrow—a passenger this time—jumped from the backseat of the car after the wreck and fled on-foot, ultimately scaling a fence to get away from pursuing officers. ROA.233.

As a result of this flight, Debrow escaped immediate arrest. ROA.237. It was, however, a hollow victory. This is because police found Debrow's camouflage jacket snagged on the fence he scaled, the pocket of which contained Debrow's ID card. ROA.233. Moreover, in the backseat of the stolen Kia, police found a Pioneer Arms "Hellpup" pistol. ROA.233.

The gun had an extended magazine, loaded with 27 rounds of ammunition. ROA.233.

*District Court Proceedings*

The federal grand jury returned an indictment charging Debrow with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ROA.9. Debrow filed a motion to dismiss the indictment, in which he argued that§ 922(g)(1) violated the Second Amendment as applied to him after the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022). ROA.18, ROA.52. The government responded, urging that this country's history and tradition of firearm regulation permitted disarmament of Debrow based on his felony criminal history. ROA.32–45. The district court denied the motion to dismiss. ROA.64.

After denial of his motion to dismiss, Debrow pleaded guilty. ROA.104. The district court sentenced Debrow to 56 months' imprisonment. ROA.138. Debrow filed a timely notice of appeal. ROA.93

## SUMMARY OF THE ARGUMENT

This Court should affirm Debow's conviction. Debrow's predicate felony for "aggravated criminal damage to property" was obtained through his use of a stolen car to strike multiple police cruisers while fleeing arrest. This country's history and tradition supports disarmament of someone whose felony crime involved actual violence against the public like this, much less those that involve the obvious risk of harm inherent to his felony crime. Multiple Fifth Circuit decisions have rejected "as-applied" Second Amendment challenges brought by defendants with near-identical felony offenses. That Debrow's felony crime involved repurposing of a car into a dangerous weapon only adds to the founding-era basis for disarmament; as does the fact that Debrow's predicate felony, by his own guilty-plea admission, required "endangering human life" through his public activity.

# ARGUMENT

## I. Debrow's as-applied challenge fails because this country's "history and tradition" supports disarmament based on his felony criminal history.

### A. Standard of Review

This Court "review[s] preserved challenges to the constitutionality of a criminal statute de novo." *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014).

### B. Applicable Substantive Law

In *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court invalidated a New York state law that prohibited most people from ever having a gun in a public place unless that citizen could make a nebulous showing of "proper cause," and thus obtain a carry permit. *Bruen*, 597 U.S. at 11–13. In reaching this holding, the Supreme Court adopted a two-part analysis that focuses entirely on the Second Amendment's text, as informed by "historical tradition," with a special emphasis on how gun ownership rights were viewed at the time of the founding. First, a defendant must show that the conduct being regulated falls under the Second Amendment. Only once a defendant shows his conduct implicates the Second Amendment's plain text must the

7

government "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *See id*. at 24.

The Fifth Circuit has held that § 922(g)(1) remains facially constitutional and thus subject to "as-applied" challenges only. *See United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024). Moreover, in *Diaz*, the Fifth Circuit, following the Supreme Court's lead in *Rahimi*, stressed that the "historical analogue" component of *Bruen* analysis employs broad analogical reasoning, with the test demanding only a "relevantly similar" founding-era counterpart to the challenged law or felony predicate, not a categorical match in the form of a "historical twin." *See Diaz*, 116 F.4th at 467.

## C.    Application of the Law to the Record

Debrow asserts that § 922(g)(1) is unconstitutional as applied to him. Quoting the language of his predicate-felony statute of conviction, Debrow urges that his crime required only an inherent risk of danger to the public, i.e., that his crashing of his car into other occupied cars made it so that "human life might be endangered." *See* Debrow's Brief,13. According to Debrow, the obvious risk of harm is not enough; there must be actual injury or the obvious use of firearm risking injury (a distinction

that is irrelevant, for the reasons set forth below). *See* Debrow's Brief, at 13. Debrow also attempts to distinguish several on-point published Fifth Circuit cases, all of which held § 922(g)(1) did not violate the Second Amendment when applied to defendants with near-identical criminal histories. *See* Debrow's Brief, at 17–19.

Debrow's arguments fail, since this country has a long history and tradition, dating back to the founding, of disarming defendants with criminal histories like his. Again, Debrow's prior-felony conviction for "aggravated criminal damage to property," in violation of La. Rev. Stat. § 14:55, stems from openly violent conduct: Debrow led officers on a chase in a stolen car, striking multiple cruisers to evade capture. ROA.235–36. This Court has repeatedly rejected as-applied challenges by § 922(g)(1) defendants under similar circumstances. *See United States v. Reyes*, 141 F.4th 682, 686, 686 n.8 (5th Cir. 2024) (holding § 922(g)(1) constitutional as-applied to defendant with multiple felony convictions, and specifically citing his conviction for "evading arrest or detention," where he "failed to yield, ran a stop sign, and continued to travel at a high rate of speed with its headlights off"); *United States v. Betancourt*, 139 F.4th 481, 484–85 (5th Cir. 2025) (rejecting challenge for defendant with aggravated assault

conviction based on his high-speed crash, and specifically rejecting argument that crimes that "merely pose a threat to public safety" through reckless conduct have no founding-era analogue); *United States v. Simpson*, 152 F.4th 611, 614 (5th Cir. 2025) (rejecting as-applied challenge for defendant with prior "evading arrest or detention conviction" where defendant, carrying a loaded handgun (just like Debrow here) led police on a chase that led to him crashing into a brick wall).

Debrow does not dispute that this Court can consider his felony-offense conduct when deciding if his crime has a historical analogue that resulted in disarmament. *See Simpson*, 152 F.4th at 614 ("Our review of the defendant's conduct underlying the predicate offense is . . . permissible." (quoting *United States v. Morgan*, 147 F.4th 522, 528 (5th Cir. 2025))). Instead, he attempts to separate himself from these many on-point published Fifth Circuit decisions by suggesting that his offense did not involve any actual injuries to others and that, by Debrow's telling, his crime lacked some of the aggravating circumstances of those

offenses, such as triple-digit speeds or the presence of drugs.[1] *See* Debrow's Brief, at 18–19.

None of these distinctions matter for the purposes of *Bruen*'s "history and tradition" analysis, which has always required only a "relevantly similar" historical counterpart. Again, Debrow's felony predicate involved actual violence (injury to others or not) through his ramming of multiple police cruisers with his stolen car. This Court has repeatedly held disarmament for such crimes fits within this country's tradition of gun regulation. *See Betancourt,* 139 F.4th at 484 (stating, in the context of a similar flight-from-police predicate offense conduct, that this country has a history and tradition of disarming those whose crimes "pose a risk to public safety"). That Debrow made use of something so dangerous as a car—itself a dangerous weapon under these circumstances—to inflict this violence only adds to the obvious historical analogues for his prior felony crime. *See Diaz,* 116 F.4th at 464 (noting that "going armed" laws—another relevant historical analogue for this

---

[1] Debrow omits the aggravating circumstances associated with his prior felony conviction, such as the fact that the car he fled in was stolen and that he carried a loaded handgun with him during the chase. ROA.236. The record is silent on the rate of speed during Debrow's chase; it does not, as Debrow suggests, definitively state that it was "low speed."

case—aimed to stem the threat of public violence by those who rode with "dangerous or unusual weapons" in such a way as to risk harm to others); *see also United States v. Morris*, 131 F.3d 1136, 1139 (5th Cir. 1997) (stating for purposes of a guidelines enhancement that a car is a "dangerous weapon" when used to ram other cars or to flee capture in a way that puts others at risk).

But this Court can accept all of Debrow's "conduct minimizing" arguments and still affirm his conviction. This is because this Court has held that this country's history and tradition permits Congress to disarm those convicted of "inherently dangerous" crimes, regardless of whether that risk was borne out into actual harm in a specific case. *See United States v. Kimble*, 142 F.4th 308, 316–18 (5th Cir. 2025) (holding that the Second Amendment permits "categorial disarmament" of defendants with a felony drug-trafficking conviction because drug-trafficking poses an inherent risk of violence, regardless of whether that risk blossoms into actual harm in a specific case). Debrow cannot credibly dispute that his predicate felony involved an "inherent risk" of violence or harm to others; he admitted to it by virtue of pleading guilty to the offense. *See* La. Rev. Stat. Ann. § 14:55(A) (requiring the defendant's damage to another's

property be carried out in such a way that "it [was] foreseeable that human life might be endangered" through his actions).[2]

In sum, this Country's history and tradition permits disarmament of those whose crimes pose an inherent risk of violence. Debrow's predicate felony comports with this tradition, with Debrow even repurposing his car into a deadly weapon in the process.

## CONCLUSION

This Court should affirm Debrow's conviction.

Respectfully submitted,

ZACHARY A. KELLER
United States Attorney

BY: s/ T. Forrest Phillips

T. FORREST PHILLIPS
AL Bar # 3736E29R
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

---

[2] This is not to say that the predicate felony must have an element contemplating risk of injury to others; indeed, the drug-trafficking offense at issue in *Kimble* did not. Moreover, no court, at any level, has ever applied the categorical approach to Second Amendment claims. The fact that Debrow admitted his crime involved an inherent risk of injury to others, however, is relevant in that it makes this an easy case.

## CERTIFICATE OF SERVICE and
## COMPLIANCE WITH ECF FILING STANDARDS

I hereby certify that a copy of the foregoing Brief on Behalf of Appellee, The United States of America, was filed electronically with the Fifth Circuit Court of Appeals using the electronic filing system. Notice of this filing will be sent to counsel of record either by operation of the court's electronic filing system and/or via United States Mail to:

Mr. Dustin C. Talbot
Appellate Chief
Federal Public Defender's Office
Middle & Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, LA 70501

In addition, I hereby certify that: (1) all required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and, (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Lafayette, Louisiana, this the 19th day of November, 2025.

BY: *s/ T. Forrest Phillips*

T. FORREST PHILLIPS
AL Bar # 3736E29R
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

14

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        (a)     This brief contains **2,094** words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        (a)     This brief has been prepared in a proportionally spaced typeface using:

            Software Name and Version – **Microsoft Word Office 365**;

            in Typeface Name and Font Size - **Century Schoolbook 14 pt.**

_s/T. Forrest Phillips_                     <u>November 19, 2025</u>

T. FORREST PHILLIPS                    Date
AL Bar # 3736E29R
Assistant United States Attorney