In the
United States Court of Appeals
for the Fifth Circuit

No. 25-30380

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

TALANZO DEBROW,

*Defendant - Appellant*

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 5:24-CR-238-1

REPLY BRIEF FOR THE APPELLANT
TALANZO DEBROW

**REBECCA L. HUDSMITH**
Federal Public Defender

**DUSTIN C. TALBOT**
Appellate Chief
Federal Public Defender's Office
Middle and Western Districts of
Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

*Attorney for the Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................i

TABLE OF AUTHORITIES ...............................................................................iii

RE-STATEMENT OF THE ISSUE.......................................................... 1

> Whether 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied to an individual whose sole disqualifying conviction is for aggravated criminal damage to property under Louisiana law, an offense that does not require actual violence, use of a weapon, or intent to harm any person?

REPLY ARGUMENT ........................................................................ 2

    I.    Mr. Debrow's discrete property damage incident is materially distinguishable from the extended dangerous high-speed chases in *Reyes*, *Betancourt*, and *Simpson*................................. 2

        A.    *Reyes* involved extended high-speed flight, weapons discharge, and extensive violent criminal history ............. 2

        B.    *Betancourt* involved a 107-mile-per-hour chase causing serious injuries to multiple victims.................................... 3

        C.    *Simpson* involved a convicted felon possessing a loaded firearm during a high-speed chase.................................... 5

        D.    These factual distinctions are dispositive under *Bruen*'s historical methodology...................................... 6

    II.    Preservation of the constitutional claim for further review .. 8

CONCLUSION ............................................................................. 9

CERTIFICATE OF SERVICE .......................................................... 10

CERTIFICATE OF COMPLIANCE ...................................................... 10

TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE**

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ................................................................................ *passim*

*United States v. Betancourt*, 139 F.4th 480 (5th Cir. 2025) .......... *passim*

*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) .............................. 6

*United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025) ....................... 6-7

*United States v. Reyes*, 141 F.4th 682 (5th Cir. 2025) ................... *passim*

*United States v. Simpson*, 152 F.4th 611 (5th Cir. 2025) .............. *passim*

**STATUTES**

U.S. Const. amend. II ................................................................... *passim*

18 U.S.C. § 922(g)(1) ..................................................................... 1, 6, 8

No. 25-30380

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

TALANZO DEBROW,

*Defendant - Appellant*

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 5:24-CR-238-1

## REPLY BRIEF FOR THE APPELLANT
## TALANZO DEBROW

## STATEMENT OF THE ISSUE

Whether 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied to an individual whose sole disqualifying conviction is for aggravated criminal damage to property under Louisiana law, an offense that does not require actual violence, use of a weapon, or intent to harm any person?

1

<u>REPLY ARGUMENT</u>

I.    **Mr. Debrow's discrete property damage incident is materially distinguishable from the extended dangerous high-speed chases in _Reyes_, _Betancourt_, and _Simpson_**

The government argues that this Court's recent decisions resolve this appeal. But _Reyes_, _Betancourt_, and _Simpson_ each involved conduct fundamentally different from Mr. Debrow's single instance of property damage. These factual differences are not mere details. Under _Bruen's_ methodology, which requires examining "how and why" historical regulations burdened the right to armed self-defense, the specific nature of the predicate conduct determines whether historical tradition supports disarmament. _New York State Rifle & Pistol Ass'n, Inc. v. Bruen_, 597 U.S. 1, 29 (2022).

A.    **_Reyes_ involved extended high-speed flight, weapons discharge, and extensive violent criminal history**

In _United States v. Reyes_, 141 F.4th 682 (5th Cir. 2025), the defendant engaged in a dangerous high-speed pursuit. When officers were investigating a drive by shooting, they attempted a traffic stop but Reyes "failed to yield, ran a stop sign, and continued to travel at a high rate of speed with [his] headlights off." _Id._ at 686 n. 8. This high speed flight at night without headlights created sustained danger to the public.

More critically, Reyes had "a violent criminal history including several other felony convictions extending back to 2007," including a 2008 conviction for deadly conduct discharge of a firearm. *Id.* at 686. Reyes also had several other prior felony convictions for drug and firearm offenses. *Id.* The Court's analysis emphasized this pattern of violent felonies, not merely the vehicular conduct. Reyes demonstrated a history of threatening public safety through both firearms misuse and dangerous driving.

Mr. Debrow's conviction involves none of these elements. His incident was discrete and stationary—two collisions at a traffic stop followed by immediate surrender. He did not lead police on an extended chase through populated areas. He has no conviction for weapons discharge or other violent felonies—his only other prior conviction was a misdemeanor possession of marijuana offense. ROA.200. The *Reyes* Court's holding rested on the combination of dangerous flight and violent criminal history, neither of which exists here.

B. *Betancourt* involved a 107-mile-per-hour chase causing serious injuries to multiple victims

*Betancourt* presents even starker distinctions. *United States v. Betancourt*, 139 F.4th 480 (5th Cir. 2025). The defendant "disregarded a

flashing red light while driving at his vehicle's maximum speed, 107 miles per hour, causing a major crash and serious injuries to two people." *Id.* at 484. The collision flipped Betancourt's vehicle multiple times and ejected his passenger. The occupants of the other vehicle were hospitalized with one needing stitches to close a facial laceration, and the other requiring surgery to repair a ruptured small intestine. *Id.* at 482.

This Court emphasized both the extreme speed and the actual serious injuries inflicted. The opinion described Betancourt's conduct as creating a threat to public safety because his actions "put his passenger's safety at risk . . . along with the safety of the driver of the other vehicle, who needed surgery after Betancourt caused the crash." *Id.* at 484 (cleaned up). In *Betancourt*, the defendant's aggravated assault convictions stemmed directly from these severe injuries caused by highway-speed collision. *Id.* at 482.

Mr. Debrow caused no injuries whatsoever. He was not traveling at 107 miles per hour or any significant speed. The government attempts to equate these dramatically different scenarios, but *Betancourt*'s holding depends on the combination of extreme speed and actual violence resulting in serious bodily injury.

**C.** *Simpson* **involved a convicted felon possessing a loaded firearm during a high-speed chase**

*Simpson* likewise involved aggravating factors absent here. *United States v. Simpson*, 152 F.4th 611 (5th Cir. 2025). The defendant "accelerated" his vehicle in an attempt to evade police, "lost control and collided into a brick wall." *Id.* at 614. But the critical facts distinguishing *Simpson* appear in the Court's analysis: "Simpson was then already a convicted felon, and he had cocaine and a loaded revolver in his possession." *Id.*

Mr. Debrow possessed no drugs during his predicate offense. Neither did he personally possess a firearm, like Simpson. *See id.* at 615 (The Court specifically noted that Simpson "had a loaded gun on him when he crashed the vehicle to evade arrest."). Here, the report indicates that a stolen Glock pistol was located in Mr. Debrow's vehicle upon arrest, but there was another occupant in the car with Mr. Debrow and Mr. Debrow was never convicted for possessing that firearm. ROA.200. His offense involved property damage only, with no firearms or drug possession. The Simpson Court's emphasis on the loaded revolver reveals that weapon possession during the predicate conduct significantly influenced the constitutional analysis.

## D. These factual distinctions are dispositive under *Bruen*'s historical methodology

The government dismisses these distinctions as irrelevant "conduct minimizing." Gov't Br. at 12. But *Bruen*'s historical analysis depends on such distinctions. The Supreme Court rejected categorical approaches in favor of examining whether specific modern regulations share sufficient characteristics with historical analogues. Historical tradition supports disarming those who engaged in extended dangerous flight, caused serious injuries, or possessed drugs and weapons during their predicate offenses. No historical tradition supports disarming those convicted of discrete property damage like Mr. Debrow.

The government's approach would render *Diaz*'s preservation of as-applied challenges meaningless. If every vehicular offense justifies disarmament regardless of speed, duration, injuries, or weapon involvement, then as-applied challenges serve no purpose. But *Diaz* explicitly held that § 922(g)(1) remains subject to such challenges precisely because not all felonies share the same historical grounding. 116 F.4th at 471-72.

The government also relies on *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025), for the proposition that "inherently dangerous"

crimes justify disarmament regardless of actual harm. Gov't Br. at 18 (citing *Kimble*, 142 F.4th at 316-18). But *Kimble* involved drug trafficking, an offense with established connections to violence in American legal tradition. *Kimble*, 142 F.4th at 316-18. The government cites no founding-era tradition of disarming property offenders based on potential risk. *Kimble*'s framework operates only after the government establishes historical grounding for the category of offense—a threshold the government has not met here.

Moreover, the government's reading of *Kimble* would eliminate factual distinctions altogether. Under that reading, any offense creating foreseeable risk would justify disarmament without examining the specific conduct. But if that were correct, the *Reyes*, *Betancourt*, and *Simpson* Courts would not have devoted substantial analysis to the defendants' specific conduct. Those opinions emphasize extended chases, high speeds, serious injuries, and weapon possession because such facts matter under *Bruen*'s individualized historical analysis.

The founding-era evidence reinforces these distinctions. Historical going-armed laws disarmed those who carried weapons threateningly in public, creating sustained fear and disrupting public order. Extended

7

high-speed chases that endanger the public for prolonged periods share characteristics with such conduct—they involve sustained dangerous behavior threatening public safety. Momentary property damage at a traffic stop does not. To hold otherwise would extend historical tradition far beyond its actual scope, permitting disarmament for any offense creating momentary risk.

## II.    Preservation of the constitutional claim for further review

Should this Court determine that its precedents in *Reyes*, *Betancourt*, and *Simpson* foreclose Mr. Debrow's as-applied challenge, Mr. Debrow respectfully preserves this constitutional argument for further review. The Supreme Court's evolving Second Amendment jurisprudence, particularly following *Rahimi*, continues to refine the proper application of historical analogues to modern regulations. Mr. Debrow maintains that permanently disarming individuals based solely on property offenses lacks any grounding in the Nation's historical tradition of firearm regulation, and that such applications of § 922(g)(1) cannot survive the rigorous historical analysis that *Bruen* demands.

## CONCLUSION

For the foregoing reasons, Appellant Talanzo Debrow respectfully requests that the Court reverse the district court's denial of his motion to dismiss and remand with instructions to dismiss the indictment.

Respectfully submitted,

REBECCA L. HUDSMITH
Federal Public Defender

BY: *s/ Dustin C. Talbot*
DUSTIN C. TALBOT
Appellate Chief
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

*Attorney for the Appellant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the above and foregoing has this day been served by the 5th Circuit electronic filing system on the Assistant United States Attorney, on December 10, 2025.

<u>*s/Dustin C. Talbot*</u>
DUSTIN C. TALBOT

<u>**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,334 words.

2. This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century typeface with a 14 point font.

Lafayette, Louisiana, December 10, 2025.

<u>*s/Dustin C. Talbot*</u>
DUSTIN C. TALBOT